UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EDWARD M., III,

                    Plaintiff,

v.                                                CASE NO. 1:25-cv-00164
                                                  (JGW)

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.

_____

J. Gregory Wehrman, U.S. Magistrate Judge,

## MEMORANDUM-DECISION and ORDER

The parties consented in accordance with a standing order to proceed before the undersigned. The Court has jurisdiction over this matter pursuant to 42 U.S.C. § 405(g). The matter is presently before the Court on the parties' cross-motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docs. 5, 6.) Upon review of the administrative record and consideration of the parties' filings, Plaintiff's Motion for Judgment on Pleadings (Doc. 5) is **DENIED**, Defendant's Motion for Judgment on the Pleadings (Doc. 6) is **GRANTED**, and the decision of the Commissioner is **AFFIRMED**.

## I.     RELEVANT BACKGROUND

### A.     Procedural Background

On July 27, 2023, Plaintiff protectively filed an application for a period of disability and disability insurance benefits, alleging an onset date of July 17, 2023. (Tr. 77, 174-80.) Plaintiff's claim was denied initially and upon reconsideration. (Tr. 76, 88.) He then

timely requested a hearing before an Administrative Law Judge (ALJ).  (Tr. 111.)  Plaintiff appeared with counsel for a telephonic hearing before ALJ Stephen Cordovani held on July 16, 2024.  (Tr. 35-75.)  On October 22, 2024, the ALJ issued an unfavorable decision, finding that Plaintiff was not disabled.  (Tr. 11-34.)  The Appeals Council denied his request for review, (Tr. 1-6), and Plaintiff timely filed his appeal to this Court.

### B.    Factual Background[1]

Plaintiff was born November 1, 1970 and advanced through college.  (Tr. 77, 79, 210.)  He initially alleged his disabling conditions to include severe anxiety/PTSD (related to military service), chronic deteriorating arthritis (knees and shoulder), and cataracts. (Tr. 77.)

At the hearing before the ALJ, Plaintiff indicated that he did not think he could work a full-time job because "[b]ased on past experiences, with extreme anger levels and mistrusting of anyone in the workplace, in terms also of the physical layout, the environment would not allow me to have a work experience that I'd be able to do with any great proficiency."  (Tr. 59.)  He explained further that, with his mental health concerns, he does "not do well with other people."  (Tr. 53.)

Physically, Plaintiff described that he cannot use the whole left side of his body. (*Id.*)  He explained that his left shoulder and arm is "basically useless." (*Id.*)  He elaborated that he has little abduction and "the pain is excruciating on most days." (Tr. 54.)   He indicated that he was not able to reach in front or over his head. (Tr. 57.)  He described that he could only lift nominal weight, which he defined as two pounds. (*Id.*) He explained

---

[1] This recitation of facts primarily includes testimony from the hearing before the ALJ.  Other facts will be developed throughout the opinion as relevant to the Court's analysis.

that, if he dropped something light, he was able to bend over and retrieve it. (*Id.*) He testified he could not effectively work at a computer. (*Id.*)

Additionally, Plaintiff explained that his knee "falls out periodically," causing him to fall down the stairs or when he is walking. (Tr. 54.) He indicated his knee causes him a lot of pain. (*Id.*) Plaintiff described that sitting is painful because of his knee, but standing is "far worse" because his knee may give out. (*Id.*) He explained that how far he can walk depends on the day—some days he cannot walk far and others he can walk down the block. (Tr. 56.) He also noted that he sometimes uses both a brace and a cane, but the cane is ineffective because of his shoulder. (*Id.*) He affirmed the brace was helpful. (*Id.*) He indicated that any kind of stairs, bending, or stooping was painful and difficult, as his knee will only bend so far. (*Id.*) He described he could not squat or crouch at all. (*Id.*) Plaintiff explained that, when he experiences excruciating pain from his knee, he utilizes an ice pack and waits for the pain to subside. (Tr. 55.)

Plaintiff also identified difficulties resulting from bone fragments in his neck, as well as arthritis. (Tr. 57.) He noted that he was unable to turn his head without pain. (*Id.*) These issues also affected his ability to get out of his chair and out of bed. (Tr. 58.)

Plaintiff also described mental health issues, including difficulty with his memory, indicating that "[i]t's been slipping." (*Id.*) He characterized himself as becoming "pretty forgetful." (*Id.*) He further explained that his pain impacts his focus and concentration, and he has difficulty finishing tasks. (*Id.*) He described difficulties with anger issues, but he indicated that the medication has helped with those issues. (*Id.*) He indicated he could not sleep more than a few hours a night. (*Id.*)

3

Plaintiff testified that he did experience panic attacks, for which he took medication, and the medication has reduced his panic attacks from four times a week to once a week. (Tr. 59-60.)  He explained that the attacks make him feel like he is having a heart attack and may last around thirty minutes to an hour, after which they subside, but it takes about two hours for him to recover from a panic attack. (Tr. 60.) Plaintiff testified that this medication also eliminated the suicidal ideation he previously experienced. (Tr. 69.) Additionally, it helped with his anger and anxiety, although he still experiences those emotions. (*Id.*)

Plaintiff explained he is not able to deal with the public for any length of time and generally declines going to places that have crowds. (Tr. 60-61.)

With regard to daily activities, Plaintiff described that his wife does the laundry and the cooking.  (Tr. 44.)  He explained that he is not skilled at cooking and cannot help with the laundry due to issues with his left shoulder. (Tr. 45.) His wife also generally does the grocery shopping, but he sometimes goes with her. (*Id.*)  Plaintiff has a driver's license and can drive himself to his medical appointments on a weekly basis.  (Tr. 44.) Occasionally, he will stop and pick up things when he gets gas. (Tr. 46.)  In sum, Plaintiff does not assist with any household chores, indicating that he cannot do them effectively, so his wife does them all.  (Tr. 61.)  He testified that, in a usual day, he watches a lot of television and may read a bit.  (Tr. 62.)  Generally, he is able to accomplish most personal care tasks, but his wife helps occasionally if needed. (Tr. 62-63.)  He does struggle with putting on his shoes and socks, but his wife helps him.  (Tr. 63.)

Previously, Plaintiff worked in the Coast Guard, coordinating search and rescue and managing classified material.  (Tr. 46.)   He retired after twenty-two years of service.

4

(*Id.*) He also worked as a case manager for a program for veterans in danger of becoming homeless. (Tr. 47.) He ultimately stopped counseling veterans due to his own mental health concerns, specifically that he was having difficulties with his co-workers and clients. (Tr. 48.) He also described difficulties with his supervisor at another counseling job, resulting in his resignation from that position. (Tr. 50.) He indicated he was active in both the American Legion and VFW boards, attending meetings approximately once a month. (Tr. 52.)

The ALJ posed several hypotheticals to the vocational expert (VE). First, he asked her to assume an individual with the same age, education and work experience as Plaintiff. (Tr. 71.) He further asked her to assume the hypothetical individual:

> is capable of a range of only light exertion[al] activity, occasional ramps, stairs, no ladders, ropes, scaffolds. Frequent balance as that term is defined in the SCO. Frequent stoop. No kneeling or crawling. Occasional crouch.
>
> Frequent reach with the left non-dominant arm. However, with no reach at shoulder level or higher with the left non-dominant arm. Frequent handle left non-dominant hand. No work around hazards, such as unprotected heights, dangerous moving mechanical parts. . . . Mentally the individual can understand, remember and carry out simple instructions and tasks with regular levels of supervision. He can maintain attention and concentration and regular attendance at work for simple, unskilled work. No supervisor duties. No independent decision-making. No strict production quotas as you'd see with assembly line work and minimal changes in work routine and processes. There could be occasional interaction with supervisors and co-workers but no interaction with the general public. No work-related interaction with the general public. No team or tandem work.

(Tr. 72.)

The VE identified three potential jobs: marker, 209.587-034; housekeeping/cleaner, 323.687-014; and routing clerk, 222.687-022. (*Id.*) Thereafter, the ALJ specifically inquired into the VE's opinion and its consistency with the DOT:

5

Q. To the extent any aspects of the hypothetical are not consistent with respect to the DOT, we have to focus on the, number one, unilateral upper extremity limitations and secondly, the plane of reaching, that being no shoulder level or higher.  In additional[] we have issues regarding assembly line work, team tandem work, durations of interactions, changes, how were you able to reach your conclusions that these jobs would be available at this hypothetical?

A. Those issues are based on my training and experience researching jobs in the labor market.

Q And does that include researching the three jobs you identified?

A Yes.

Q And through that process, you're familiar with the central functions of those jobs?

A. Yes.

Q. The DOT is a relatively old document. Are the way the jobs are described in the DOT any different from how they might be performed in the current economy?

A. Not these jobs, no.

(Tr. 73.)

## C.    ALJ's Decision

Generally, in his decision, the ALJ made the following findings of fact and conclusions of law.

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2026. (Tr. 17.)

2. The claimant has not engaged in substantial gainful activity since July 17, 2023, the alleged onset date (20 CFR 404.1571 *et seq.*).  (Tr. 17.)

3. The claimant has the following severe impairments: degenerative joint disease of the left shoulder; degenerative joint disease of the left knee; degenerative disc disease of the cervical spine; anxiety disorder; depressive disorder; obsessive-compulsive disorder ("OCD"); and post-traumatic stress disorder ("PTSD") (20 CFR 404.1520(c)). (Tr. 17.)

6

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (Tr. 18.)

5.  After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can occasionally use occasional ramps and stairs; never use ladders, ropes, or scaffolds; frequently balance as that term is defined in the SCO; frequently stoop; never kneel; never crawl; occasionally crouch; frequently reach with his left, non-dominant arm but never reach at shoulder level or higher with that same arm; frequently handle with his left, nondominant hand; can never work around hazards such as unprotected heights or hazardous moving mechanical parts; can understand, remember and carry out simple instructions and tasks with regular levels of supervision; can maintain attention and concentration and regular attendance at work for simple unskilled work; can have no supervisory duties, no independent decision-making, no strict production quotas as with assembly line work, and only minimal changes in work routine and processes; can occasionally interact with supervisors and co-workers but never have work-related interaction with the general public; and can perform no team or tandem work. (Tr. 19.)

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565). (Tr. 26.)

7.  The claimant was born on November 1, 1970 and was 52 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563).  (Tr. 27.)

8.  The claimant has at least a high school education (20 CFR 404.1564). (Tr. 27.)

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2). (Tr. 27.)

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a). (Tr. 27.)

11. The claimant has not been under a disability, as defined in the Social Security Act, from July 17, 2023, through the date of this decision (20 CFR 404.1520(g)). (Tr. 28.)

## II.   LEGAL STANDARD

### A.   Standard of Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). "To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

### B.   Standard to Determine Disability

To be disabled under the Social Security Act (Act), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation

to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a).

At step one, the claimant must demonstrate that he is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that he has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R. § 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient residual functional capacity (RFC) for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

## III.   ANALYSIS

Plaintiff asserts two arguments in support of remand.  First, he argues that the ALJ failed to reconcile an inconsistency between the VE testimony and the DOT.  (Doc. 5-1 at 11.)  Second, he contends that the RFC was not supported by substantial evidence because it contained contradictory limitations pertaining to interactions with supervisors. (*See id.* at 15.)

9

**A. The ALJ Did Not Fail to Reconcile Any Inconsistency Between the VE Testimony and the DOT.**

Plaintiff maintains that the ALJ erred in failing to reconcile the inconsistencies between the VE's testimony and the DOT as it pertains to reaching. (Doc. 5-1 at 11.) Plaintiff, relying on *Lockwood v. Comm'r of Soc. Sec. Admin.*, 914 F.3d 87 (2d Cir. 2019), argues that the ALJ did not sufficiently explore the basis for the VE's testimony or otherwise "do enough to reconcile" the inconsistency. (Doc. 5-1 at 13.)

As pertinent to this issue, the ALJ's RFC limited Plaintiff to "frequently reach with his left, non-dominant arm but never reach at shoulder level or higher with that same arm." (Tr. 19.) In response to the hypothetical including this limitation, the VE identified a routing clerk, marker, and cleaner/housekeeping, all of which require frequent reaching according to the Dictionary of Occupational Titles (DOT). *See* Tr. 72; *see also* Routing Clerk, DICOT 222.687-022, 1991 WL 672133 (Jan. 1, 2016); Marker, DICOT 209.587-034, 1991 WL 671802 (Jan. 1, 2016); Cleaner, Housekeeping, DICOT 323.687-014, 1991 WL 672783 (Jan. 1, 2016). As the parties acknowledge, the DOT does not differentiate between reaching in any direction and reaching overhead.

At step five, the Commissioner has the burden to demonstrate that a claimant can perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. *See* 20 C.F.R. § 416.920(g). "Work exists in the national economy when there is a significant number of jobs (in one or more occupations) having requirements which [Plaintiff is] able to meet with [her] physical or mental abilities and vocational qualifications." 20 C.F.R. § 416.966(b). If the ALJ chooses to rely on the testimony of a VE at this step five, the ALJ "must be alert to the possibility of 'apparent unresolved conflict[s]' between th[at] testimony and the [DOT]." *Lockwood*,

10

914 F.3d at 91 (quoting Social Security Ruling (SSR) 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000)).  That is, the ALJ has an "independent, affirmative obligation . . . to undertake a meaningful investigatory effort to uncover apparent conflicts, beyond merely asking the [VE] if there is one." *Id.* at 94 (internal citation, quotation marks and alterations omitted).  "When there is an apparent unresolved conflict between VE . . .evidence and the DOT, the [ALJ] must elicit a reasonable explanation for the conflict before relying on the VE . . . evidence to support a determination or decision about whether the claimant is disabled."  SSR-004p, 2000 WL 1898704, at *2.[2]  The Second Circuit later found that the ALJ properly relied on a VE's testimony after "specifically ask[ing] about both potential conflicts and the vocational expert provided an explanation that included an analysis based on his own expertise and labor market surveys he conducted."  *Reilly v. Comm'r of Soc. Sec.*, No. 21-8-cv, 2022 WL 803316, at *2 (2d Cir. Mar. 17, 2022).

There is no dispute that the DOT is silent on whether overhead reaching is required in any of the jobs identified by the VE, as the descriptions include only the term "reaching." Defendant appears to concede that this creates an apparent conflict, focusing on the contention that the ALJ adequately resolved any such conflict through his questioning. (*See* Doc. 6-1 at 10-11.)

At the hearing, ALJ Cordovani specifically asked the VE how she reached her conclusion that these jobs would be available with limitations pertaining to "unilateral upper extremity limitations and secondly, the plane of reaching, that being no shoulder

---

[2] This Court is aware that on January 6, 2025, the Social Security Administration issued SSR 24-3p, "rescinding SSR 00-4p and [] no longer require[ing] adjudicators to identify and resolve conflicts between occupational information provided by [vocational specialists] and [vocational experts] and information in the [DOT]."  SSR 24-3p, available at https://www.ssa.gov/OP_Home/rulings/di/02/SSR2024-03-di-02.html, (last visited June 2, 2026).  However, this regulation does not apply retroactively.  *Id.* at n.1.

level or higher." (Tr. 73.)  The VE explained that her conclusions as to those limitations were based on her "training and experience researching jobs in the labor market."  (*Id.*) The VE clarified that her research included the three jobs identified and further made her familiar "with the central functions of those jobs." (*Id.*)

This colloquy goes beyond the circumstances before the Second Circuit in *Lockwood*.  In that case, the only question posed by the ALJ to that VE was whether the opinion was consistent with the DOT, to which the VE responded it was.  *Lockwood*, 914 F.3d at 93. Here, the ALJ explored the basis for the opinion, confirming that the VE considered the reaching limitations for the specific positions she opined were available and that her opinion was sufficiently supported.  As the ALJ recognized in his decision:

> Although the vocational expert's testimony is not entirely consistent with the information contained in the Dictionary of Occupational Titles ("DOT"), there is a reasonable explanation for the discrepancy. The DOT does not directly address all non-exertional aspects of a potential RFC (*i.e.*, unilateral upper extremity limits; over shoulder reach; assembly line work; changes; duration of interactions; team tandem work, etc.). Due to the vocational expert's experience, expertise, and reliable testimony at the hearing, however, the vocational expert's responses are accepted in accordance with Social Security Ruling 00-4p. The vocational expert testified that she relied upon her training and experience researching jobs in labor market, including the jobs identified and that she was as a result familiar with the essential functions of the jobs and how they are currently performed. The vocational expert is well qualified and neither the claimant nor the claimant's representative raised any objections to the vocational expert's testimony or qualifications.

(Tr. 28.)

Several other decisions have found such an inquiry to be sufficient.  *See Tammy W. v. Comm'r of Soc. Sec.*, No. 22-CV-990-HKS, 2026 WL 183481, at *6 (W.D.N.Y. Jan. 23, 2026) (finding the ALJ fulfilled her duty to resolve the conflict when the VE explained that her opinion was based on her "education and experience as a rehab counselor and

researcher"); *Kathryn D. v. Comm'r of Soc. Sec.*, No. 1:22-cv-31-JJM, 2025 WL 2115487, at *4 (W.D.N.Y. July 29, 2025) (finding that the ALJ adequately resolved the inconsistency with the DOT when the VE's testimony was based on her "interpretation of the DOT and [her] training and education and work experience as a vocational rehab counselor and how [she] would understand those jobs to be performed."); *Barbara W. v. Comm'r of Soc. Sec.*, No. 1:22-cv-575-TPK, 2025 WL 276668, at * 6 (W.D.N.Y. Jan. 23, 2025) (finding that the ALJ sufficiently resolved the conflict between the DOT and the VE's testimony when the ALJ acknowledged the conflict and the expert provided testimony about why he believed the jobs did not require overhead reaching, which opinion was based on his experience with the jobs identified); *Jetaun C. R. v. Comm'r of Soc. Sec.*, No. 1:20-cv-1489, 2022 WL 7085513, at *4 (W.D.N.Y. Oct. 12, 2022) (noting that a VE is permitted to rely on his experience regarding job requirements when the DOT is silent and finding the ALJ obtained a reasonable explanation to the apparent conflict).

In addition to *Lockwood*, Plaintiff relies on other decisions within this district, such as *Roderick R. v. Comm'r of Soc. Sec.*, No. 1:21-cv-577-TPK, 2023 WL 3642035, at *1 (W.D.N.Y. May 25, 2023), in support of his position that the ALJ failed to sufficiently resolve the conflict. The Court finds this case distinguishable because it involved an RFC that limited the plaintiff to occasional overhead reaching, while the proposed viable jobs required frequent reaching, and the VE did not explain how those limitations (i.e. frequent reaching and occasional overhead reaching) could coexist. *See id.* at *4-5. *See also John C. v. Comm'r of Soc. Sec.*, No. 1:22-cv-00365-JGW, 2024 WL 3759753, at *1 (W.D.N.Y. Aug. 12, 2024) (similar). In this case, the ALJ's RFC included limitations involving Plaintiff's left, non-dominant arm, but the permitted interval of reaching was still

13

"frequent"—which is consistent with the DOT descriptions. (*See* Tr. 19); *see also* Routing Clerk, DICOT 222.687-022, 1991 WL 672133; Marker, DICOT 209.587-034, 1991 WL 671802; Cleaner, Housekeeping, DICOT 323.687-014, 1991 WL 672783.

Therefore, the Court finds that the ALJ adequately resolved the apparent conflict regarding overhead reaching and concludes the ALJ's step five finding was supported by substantial evidence.

### B.  The RFC Was Supported by Substantial Evidence.

Plaintiff next argues that this matter should be remanded because the ALJ's RFC was internally inconsistent, and therefore not supported by substantial evidence. According to Plaintiff, the inconsistency exists because the ALJ limited Plaintiff to being able to "remember and carry out simple instructions and tasks with regular levels of supervision" as well as "occasionally interact with supervisors and co-workers."  (See Doc. 5-1 at 16-17; Tr. 19.)  Plaintiff also contends that the ALJ failed to adequately explain or support these findings.

A claimant's RFC is the most he can still do despite his limitations and is based on all relevant evidence in the record.  *See* 20 C.F.R. §§ 404.1520(e), 404.945(a)(1), (a)(3); SSR 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996).  The regulations explicitly provide that the RFC is an administrative finding reserved to the Commissioner and not a medical finding.  20 C.F.R. § 404.1527(d); *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022) (recognizing that "the ALJ bears 'the final responsibility' for making RFC determinations"); *see also Desirae D. v. Comm'r of Soc. Sec.*, 20-cv-00054-JGW, 2021 WL 2042576, at *3 (W.D.N.Y. May 21, 2021).

14

Plaintiff appears to argue that he cannot be limited to "regular levels of supervision" while only "occasionally interact[ing] with supervisors." But these limitations are not inconsistent with each other. As Defendant points out, the vocational term "occasionally" means occurring from very little up to one third of the workday. *See* SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). While the term "regular" has no specific vocational meaning, it generally means "constituted, conducted, scheduled, or done in conformity with established or prescribed usages, rules, or discipline; recurring, attending, or functioning at fixed, uniform, or normal intervals; . . . normal, standard." *See* https://www.merriam-webster.com/dictionary/regular (last visited June 2, 2026). There is nothing to suggest that "regular supervision" requires more than occasional interaction with a supervisor.

Moreover, in the hypothetical presented to the VE, the ALJ specifically noted the need for "regular levels of supervision," as well as "occasional interaction with supervisors and co-workers." (Tr. 72.) The VE identified the three jobs in response, confirming that, in her opinion, Plaintiff could perform these jobs as "regular levels of supervision" with only "occasional interaction" with a supervisor. (*See* Tr. 72-73.) And this conclusion appears consistent with the level of interaction with people contained in the DOT definition, which assigns a "people" level of interaction as "not significant." *See* Routing Clerk, DICOT 222.687-022, 1991 WL 672133; Marker, DICOT 209.587-034, 1991 WL 671802; Cleaner, Housekeeping, DICOT 323.687-014, 1991 WL 672783.

Finally, the Court finds no error in the ALJ's analysis or explanation supporting his findings. The ALJ carefully detailed the objective evidence and thoroughly analyzed the medical opinions in the record.[3] (*See* Tr. 19-26.) He explained the reason for his

---

[3] The Court notes that, despite the existence of six medical opinions in the record, none included disabling limitations, as recognized by the parties. (*See* Doc. 5-1 at 10-11; Doc. 6-1 at 5-6.) Indeed, the mental

15

imposition of social limitations, specifically tying them to Plaintiff's anger issues and difficulty with interactions.  (*See* Tr. 26) (noting "[t]he claimant's anger is particularly troubling, which is why interaction with the public is reduced even further than interaction with supervisors and co-workers.  Though the claimant complained of a particular difficulty with supervisors, records reflect that the claimant's outbursts were controllable, particularly with more recent medication balancing.").  The Court is able to glean the ALJ's reasoning from his analysis and thus finds no error requiring remand.

## IV.   CONCLUSION

Based on the foregoing, the Court finds no basis for remand.  **ACCORDINGLY**, it is:

**ORDERED** that Plaintiff's Motion for Judgment on the Pleadings (Doc. 5) is **DENIED**, and it is further

**ORDERED** that Defendant's Motion for Judgment on the Pleadings (Doc. 6) is **GRANTED**.

The Clerk of Court is **DIRECTED** to close this case.

Dated: June 5, 2026                                    J. Gregory Wehrman
Rochester, New York                                    HON. J. Gregory Wehrman
                                                       United States Magistrate Judge

---

health impairment experts noted at most mild to moderate limitations in functioning, (*see* Tr. 83-85, 96-98, 432), and the physical health impairment consultative examining expert identified only "severe limitations" in reaching up or out with one arm, as well as "limited" activities in bimanual dexterity, (*see* Tr. 438).